KELI M. REYNOLDS (CA 227650)
OLMOS & REYNOLDS LAW GROUP, LLP
315 W. 9th St. Ste. 801
Los Angeles, CA 90015
(323) 951-0144
keli@olmosandreynolds.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Nakku Rebecca Favor KISAKYE,<br><br>Petitioner,<br>v.<br><br>Fereti SEMAIA, Warden, Adelanto ICE Processing Center; Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd BLANCHE, U.S. Attorney General; David VENTURELLA, Acting Director, Immigration and Customs Enforcement; Andre QUINONES, Director, Los Angeles Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations,<br><br>Respondents. | Case No. 26-cv-04708<br><br>**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; VERIFIED PETITION**<br><br>**IMMIGRATION HABEAS CASE** |

**INTRODUCTION**

1. Petitioner Nakku Rebecca Favor KISAKYE ("Petitioner"), by and through undersigned counsel, files this petition for a writ of habeas corpus challenging her unlawful detention in the custody of the Department of Homeland Security ("DHS").

2. Petitioner is a citizen of Uganda. She entered the United States as a lawful permanent resident in 2013 when she was just 17 years old. She has never been arrested or convicted of a crime. She is a registered nurse and was set to begin a new job at Kaiser Permanente on July 20, 2026, four days after she was detained by Immigration and Customs Enforcement ("ICE"). She lives with her parents and three siblings. She is the primary caretaker of her U.S. citizen sister, who is 22 years old and suffers from autism and intellectual disability. She attends a local church and bible study and engages in a personal ministry feeding and supplying the unhoused population of Skid Row.

3. Petitioner made one significant mistake in 2018: she registered to vote and voted in a U.S. election, inadvertently representing that she was a U.S. citizen. The following year, when she applied for naturalization, she disclosed the mistake to a U.S. Citizenship and Immigration Services ("USCIS") officer and cancelled her voter registration that same day as instructed. Since then, she has had frequent encounters with DHS officers. She traveled internationally and renewed her permanent resident card. She also reapplied for citizenship and attended a

naturalization interview in 2024. Petitioner was not detained during any of these encounters.

4. On information and belief, DHS officials chose not to detain Petitioner because they determined that she was not a flight risk or a danger to the community. On July 16, 2026, Petitioner attended a biometrics appointment, purportedly in support of her still-pending citizenship application. Immigration and Customs Enforcement ("ICE") officers detained Petitioner at her biometrics appointment, and transferred her to Adelanto ICE Processing Center, where she remains detained.

5. Petitioner was not given notice of ICE's intention to detain her.

6. Petitioner applied for bond, and a bond hearing was held on August 11, 2026. The Immigration Judge ("IJ"), IJ Steven Marcus, denied her bond, finding that she is a danger to the community, based purely on her mistake in 2018.

7. Petitioner's detention on this basis violates her rights under the U.S. Constitution. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Petitioner's detention violates her procedural due process rights because she was detained without a hearing or a material change in circumstances.

8. Respondents detention of Petitioner after years of liberty was arbitrary and capricious, an abuse of discretion, and contrary to law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

9. Although Petitioner was provided a bond hearing, the IJ abused his discretion in finding that Petitioner is a danger to the community without assessing her future dangerousness and without taking into consideration any of the evidence that Petitioner provided.

10. Accordingly, Petitioner seeks a writ of habeas corpus requiring her immediate release from custody and enjoining Respondents from re-detaining her: (1) absent further order of this Court; or (2) absent the provision of a pre-deprivation hearing before a neutral arbiter, at which Respondents will bear the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community.

## JURISDICTION

11. Jurisdiction is proper and relief is available pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 5 U.S.C. § 702 (waiver of sovereign immunity), 28 U.S.C. § 2241 (habeas corpus jurisdiction), and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause).

12. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

13. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Central District of California, the judicial district in which Petitioner is currently detained.

14. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims brought herein occurred in the Central District of California.

## REQUIREMENTS OF 28 U.S.C. § 2243

15. The Court must grant a petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

16. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.,* 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

**Petitioner**

17. Petitioner was arrested by ICE agents on July 16, 2026, in San Fernando, California. She has been in immigration detention at the Adelanto ICE Processing Center since that date.

**Respondents**

18. Respondent Fereti Semaia is the Warden of the Adelanto ICE Processing Center, Adelanto, California, where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

19. Respondent Markwayne Mullin is the Secretary of DHS. He is responsible for the implementation and enforcement of the Immigration and Nationality Act and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner. He is sued in his official capacity.

20. Respondent Todd Blanche is the Attorney General of the United States. He has responsibility for the administration and enforcement of the immigration laws pursuant to 8 U.S.C. § 1103. Respondent Blanche is sued in his official capacity to the extent that 8 U.S.C. § 1102 gives him authority over immigration law since the Immigration and Nationality Act has not been amended to reflect the designation of the Secretary of the Department of Homeland Security as the administrator and enforcer of immigration laws.

21. Respondent David Venturella is the Acting Director of ICE, a federal law enforcement agency within DHS. ICE's responsibilities include operating the immigration detention system. In his capacity as ICE Acting Director, Respondent

Venturella exercises control over and is a custodian of persons held at ICE facilities nationally. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

22. Respondent Andre Quinones is the Acting Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations division. As such, he is the custodian of all persons held at the ICE facilities within the Los Angeles Field Office. He is Petitioner's immediate custodian and is responsible for Petitioner's detention. He is sued in his official capacity.

## LEGAL FRAMEWORK

23. Challenges to present immigration confinement "fall within the 'core' of the writ of habeas corpus." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

24. The Fifth Amendment guarantees due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. at 693). These due process rights are both substantive and procedural.

25. "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the

exercise of power without any reasonable justification in the service of a legitimate government objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

26. "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). Due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510 at 519–20, 527–28, 531 (2003). Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." *Regino v. Staley*, 133 F.4th 951, 960 (9th Cir. 2025) (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

27. Detention in nonpunitive circumstances violates due process except "in certain special and 'narrow'" instances "where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (citations omitted); *see also Rugama v. Chestnut*, 2025

U.S. Dist. LEXIS 264530, at *5-6 (E.D. Cal. Dec. 22, 2025) (non-citizen "demonstrated at least a serious question as to whether" her detention after release on OREC where she attended all immigration appointments and lacked a criminal record violated her substantive due process rights).

28. Detention following years of liberty without a hearing or a material change in circumstances violates due process. *See, e.g., Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-CV-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026). DHS's discretionary authority to release or detain an individual previously released is not "unbounded," but must be "reasonable and reasonably explained." *De Andrade v. Moniz*, 802 F. Supp. 3d 325, 2025 U.S. Dist. 198266, at * 7 (D. Mass. Oct. 7, 2025) (quoting *Biden v. Texas*, 597 U.S. 785, 806-07 (2022)); *see also Orellana v. Francis*, 2025 U.S. Dist. LEXIS 160866, at *12 (E.D.N.Y. Aug. 19, 2025) (noting that the purpose of parole was not satisfied when an asylum seeker had not completed the asylum process and granting the petitioner release because his re-detention violated the Administrative Procedure Act).

29. Where a noncitizen has not previously been detained despite the government being plainly aware of the circumstances underlying removability, its choice not to detain the noncitizen "'at least implicitly,' 'reflects a determination by the government that the noncitizen is not a danger to the community.'" *Nola v. Dept. of*

*Homeland Security*, 2026 WL 1330294, at *8 (C.D. Cal. May 13, 2026) (quoting *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025). "The government's decision to allow Petitioner to remain free while he pursued his applications for cancellation of removal and naturalization carried with it 'an implicit promise' that he would only be detained if he commits some act demonstrating that he is a danger or a flight risk." *Nola*, 2026 WL 1330294, at *8-9.

30. Procedural due process guarantees "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). When evaluating what process is constitutionally required, courts balance three factors: the private interest affected, the risk of erroneous deprivation under existing procedures and the value of additional safeguards, and the government's interest including administrative burdens. *Id*. at 335.

31. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). "Logically, the same is true of any person who, while in removal proceedings, was never detained." *Chaudhry v. Bondi*, 2025 U.S. Dist. LEXIS 264342, at *11 (W.D. Wash. Dec. 22, 2025); *see also Diallo v. Joyce*, 2025 U.S. Dist. LEXIS 265532, at *16 (S.D.N.Y. Dec. 23, 2025) (finding "an interest in being free from imprisonment" for a noncitizen granted withholding of removal who

was never in immigration custody). Where a noncitizen is permitted to remain on his own recognizance during removal proceedings, the noncitizen "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 U.S. Dist. LEXIS 179205, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025). This liberty interest remains thereafter and grows as more time is spent out of custody. *Chaudhry,* 2025 U.S. Dist. LEXIS 264342, at *11-12.

32. The government's decision to parole a person "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Fernandez Lopez v. Wofford*, 2025 WL 2959319, *2 (E.D. Cal. 2025). Just as post-prison parole, a noncitizen's "release from ICE custody constituted an implied promise that [their] liberty would not be revoked unless [they] failed to live up to the conditions of [their] release." *Pinchi v. Noem*, 792 F. Supp. 3d 1032, 1034 (N.D. Cal. 2025) (internal quotation marks omitted). In other words, the noncitizen gains a protected liberty interest in remaining out of custody absent a showing that they pose a risk of flight or a danger.

33. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d at 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation

hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context).

34. After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated has a protected liberty interest in that conditional release. *Morrissey,* 408 U.S. at 482. As the Supreme Court recognized, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* "By whatever name, the liberty is valuable and must be seen within the protection of the [Constitution]." *Id.*

35. The government's interest in re-detaining Petitioner without *first* providing notice and a custody hearing is minimal. *See e.g.*, *Fernandez Lopez v. Wofford*, 2025 WL 2959319, *7 (E.D. Cal. Oct. 17, 2025)*; J.S.H.M. v. Wofford*, 2025 WL 2938808 at *18, 2025 U.S. Dist. LEXIS 204422 at *44 (E.D. Cal. 2025); and *Noori v. Larose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025) ("Respondents did not provide Petitioner individualized notice and reasoning prior to his arrest and detention on June 12, 2025 and have presented no legitimate reason for why those decisions were made. Any governmental interest of efficient administration of immigration laws . . . does not outweigh these first two factors.").

36. Due process entitles previously-released noncitizens to a pre-deprivation bond hearing prior to their detention. *See Valdez v. Joyce*, 2025 WL 1707737, *4 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is

sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted). Bond hearings are a routine part of immigration court proceedings, imposing a minimal cost to the government. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025).

37. Due process also requires that, at the pre-deprivation hearing, the government bear the burden of demonstrating by clear and convincing evidence that detention is necessary to prevent danger to the community or flight. *See Pinchi*, 792 F. Supp. 3d at 1038 ("Ms. Garro Pinchi may not be detained unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms."); *J.S.H.M. v. Wofford*, 2025 WL 2938808, *18 ("Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

38. Immigration detention must be reasonably related to the government's goals of preventing flight and protecting the community from harm and be accompanied by adequate procedural protections to ensure that those goals are being served. *See Zadvydas*, 533 U.S. at 690-91. Chief among these procedural protections is "the guarantee of an impartial and disinterested tribunal," which the Due Process Clause

requires "in both civil and criminal cases." *Marshall v. Jerrico*, *Inc*., 446 U.S. 238, 242 (1980).

39. Where it is obvious that there is no "legitimate interest in [a noncitizen's] detention, immediate release" is the appropriate remedy. *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13-14 (W.D. Tex. Oct. 2, 2025). At a minimum, where an individual's loss is as profound as a loss of liberty, in addition to permitting a pre-deprivation hearing, additional safeguards are necessary. *See Lopez-Arevalo v. Ripa*, 801 F. Supp. 3d 668, 688 (W.D. Tex. 2025).

40. Although 8 U.S.C. § 1226(e) limits judicial review of the government's discretionary judgment regarding a noncitizen's application for bond, that section does *not* strip federal courts of "traditional habeas jurisdiction," or jurisdiction over constitutional claims and questions of law. *See, e.g., Martinez v. Clark*, 124 F.4th 775, 781 (9th Cir. 2024). The determination of whether a noncitizen is "dangerous" for detention purposes is a mixed question of law and fact and is reviewable as a question of law. *Id.* at 779 (quotations omitted). It follows that risk of flight is also reviewable as a mixed question of law and fact.

41. Bond determinations in Immigration Court must be made in accordance with the legal standards governing flight risk and danger. *Matter of Guerra*, 24 I&N Dec. 37, 38–40 (BIA 2006). Immigration Judges consider factors including: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States,

and whether they may entitle the alien to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *Guerra,* 24 I&N Dec. at 40 (citing *Matter of Saelee*, 22 I&N Dec. 1258 (BIA 2000); *Matter of Drysdale*, 20 I&N Dec. 815, 817 (BIA 1994); and *Matter of Andrade*, 19 I&N Dec. 488 (BIA 1987)).

42. On habeas review, such mixed questions of fact and law are reviewed under the "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "In reviewing the IJ's determination, a district court['s] ... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV 02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)). Pure questions of law are reviewed de novo. *See Singh v. Holder*, 638 F.3d 1196, 1202-03 (9th Cir. 2011). In all events, the government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981.

43. Finally, under the APA, courts must "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with the law" or "without observance of procedure required by law." 5 U.S.C. § 706(2). Agency action is

> arbitrary and capricious if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that ran counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

44. "[T]he touchstone of arbitrary and capricious review under the APA is reasoned decisionmaking." *Altera Corp & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (internal quotation marks and citation omitted). "[A]n agency's action can only survive arbitrary or capricious review where it has articulated a satisfactory explanation for its actions including a rational connection between facts found and the choice made." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023) (internal quotation marks and citation omitted, alteration normalized). A court "may not infer an agency's reasoning from mere silence." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (internal quotation marks and citation omitted). "[I]t makes no difference what [an agency] may have had in mind but failed to express; an administrative agency is not allowed to change direction without some explanation of what it is doing and why." *Int'l Union, UAW v. NLRB*, 802 F.2d 969, 973-74 (7th Cir. 1986). "An agency may not,

for example, depart from a prior policy *sub silencio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (citation omitted). Courts "must not 'rubber stamp' administrative decisions that [it] deem[s] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859 (9th Cir. 2005) (internal quotation marks and citation omitted, alterations normalized).

45. It is Respondents' burden to "provide [a] reasoned explanation for [their] action." *Fox Television*, 556 U.S. at 515. "A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington*, 516 F.3d at 1112. Where a noncitizen was paroled, and that parole is later revoked without any articulable change, this "[u]nexplained inconsistency between agency actions" must be set aside as arbitrary and capricious. *See Y-Z-L-H*, 792 F. Supp. 3d at 1147 (citing *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015)).

46. Habeas relief is equitable and flexible. *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020); see also *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy"). Courts possess broad authority to craft remedies that fully address constitutional and statutory violations. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). The remedy ordered should effectively vindicate the protected liberty interest at stake and be administrable in practice.

## FACTS

47. Petitioner is a 30-year-old citizen of Uganda. *See* Declaration of Petitioner ("Pet. Decl.") ¶ 1. She immigrated to the United States on August 27, 2013 when she was 17 years old. *Id.* She remains a permanent resident. *Id*; *see also* Ex. B.

48. Petitioner is the oldest of her parents' 7 children. *See* Ex. B. She is very close with her family. Before she was detained, she lived with her mother, father, and three of her siblings in Santa Clarita, California. *See* Pet. Decl. ¶ 3; *see also* Ex. B. Petitioner's mother and siblings are all U.S. citizens, and her father is a lawful permanent resident. *See* Ex. B. In 2019, Petitioner's mother was diagnosed with breast cancer. Pet. Decl. ¶ 3. As a result, Petitioner took on primary responsibility for caring for her four youngest siblings. Pet. Decl. ¶ 3.

49. Petitioner's siblings range in age from 28 to 14. Pet. Decl. ¶ 4. All but her two youngest siblings were also born in Uganda. *Id; see also* Ex. B. Petitioner's 28-year-old brother, David, serves in the United States Air Force and lives in Texas. Pet. Decl. ¶ 4; *see also* Ex. B. Her 25-year-old brother, James, is in graduate school studying to be a Physician's Assistant. Pet. Decl. ¶ 4. He recently got engaged. *Id.* Petitioner helped her mother plan his engagement party but could not attend because she was detained. *Id.*

50. Petitioner has twin siblings who are 22 years old. Pet. Decl. ¶ 5. One of the twins, her sister Babi, has autism and an intellectual disability. *Id.* Babi's twin brother, Kato, is currently away at college studying to become a psychologist. *Id.*

Babi will require lifelong care. *Id.* She recently aged out of special education services and now receives adult supportive services through the Regional Center. *Id.* Petitioner is Babi's primary caregiver and the person she trusts most. *Id.* Petitioner makes sure she has her preferred foods and assists with her personal hygiene. *Id.*

51. Petitioner's two youngest siblings, Michaela and Joshua, are 16 and 14 years old and in high school. Pet. Decl. ¶ 6. In addition to Petitioner's responsibilities for Babi, she helps her parents care for them by cooking their dinners and taking them to school and after-school activities. *Id.*

52. In 2021, Petitioner's mother's health had improved, and Petitioner moved to Tallahassee, Florida to attend the nursing school at Florida State University. Pet. Decl. ¶ 7. She moved to Florida and lived apart from her family for just short of two years. *Id.* She graduated with a Bachelor of Science in Nursing in August of 2023. *Id; see also* Ex. B. Petitioner then returned home to Santa Clarita to live with her family. Pet. Decl. ¶ 7. She obtained her registered nurse ("RN") license on November 29, 2023. *Id; see also* Ex. B. Her license is current. Pet. Decl. ¶ 7. Petitioner was to begin a new job as an RN at Kaiser Permanente on July 20, 2026 but was detained before she could start. *Id; see also* Ex. B.

53. Petitioner serves her community in any way that she can. Pet. Decl. ¶ 14. She is a nurse and takes pride in being a healer. *Id.* She is a Christian and lives by the teachings of God. *Id.* She has attended Crosspoint Church in Santa Clarita for many years with her family. *Id.* She also recently began attending Shepherd Church in

Porter Ranch on her own because she found that the word of God resonates strongly there. *Id.* Unless she is working a nursing shift, she attends bible study every Tuesday evening at Shepherd and services every Sunday, either with her family at Crosspoint or on her own at Shepherd. *Id.*

54. Petitioner also engages in a personal ministry delivering food, water and supplies such as clothing, shoes, and hygiene products to unhoused individuals in Los Angeles. *Id; see also* Exs. B and C. She frequently visits Skid Row and knows many of the residents there. Pet. Decl. ¶ 14. She does this because she believes that the people closest to God's heart are those who are experiencing pain. *Id.*

55. Petitioner has never been arrested or charged with a crime. Pet. Decl. ¶ 8. She has made one very big mistake in her life. *Id.* In 2018, she was online at work and a window popped up about registering to vote. *Id.* Petitioner's colleagues had frequently discussed the importance of voting, and Petitioner did not know that, as a permanent resident, she was not eligible to vote. *Id.* She registered to vote, inadvertently claiming to be a U.S. citizen. *Id.* Petitioner cannot remember the actual act of registering, so she does not know how she checked a box saying that she was a U.S. citizen. *Id.* She assumes she was distracted while filling it out. *Id.* A few weeks later, a ballot came in the mail, and she filled it out and returned it. *Id.*

56. In 2019, Petitioner applied for citizenship. Pet. Decl. ¶ 9. She checked the box yes when it asked if she had ever voted. *Id.* Through her preparation for the interview, she realized that she was not allowed to vote, as that is one of the civics

questions. *Id.* She had an interview on December 6, 2019 and told the interviewing officer she had made a big mistake. *Id.* The officer told her that he could not grant her application, but if she wanted to be a candidate for citizenship in the future, she should cancel her voter registration and reapply with evidence that she had done so. *Id.*

57. That same day, Petitioner went to Norwalk, CA and cancelled her registration. Pet. Decl. ¶ 10; *see also* Ex. B. She then waited and reapplied for citizenship on July 1, 2024. Pet. Decl. ¶ 10. She attended an interview on November 20, 2024, and provided evidence that she had de-registered on December 6, 2019. *Id; see also* Ex. D. The officer told Petitioner he would have to review her case and that she should receive a decision soon. Pet. Decl. ¶ 10.

58. No decision came for more than a year. Pet. Decl. ¶ 11. Then, around July 7, 2026, Petitioner received an appointment to attend a biometrics appointment. *Id; see also* Ex. B. Petitioner changed the appointment from July 21 to July 16, as her orientation for her new job began on July 20. *Id; see also* Ex. B. Petitioner appeared at the USCIS office in San Fernando on July 16, where ICE officers arrested her. Pet. Decl. ¶ 11. She remains detained in Adelanto, California. *Id.*

59. Although Petitioner was detained on July 16, 2026, she has not been to immigration court. Pet. Decl. ¶ 12. Two hearings have been held. *Id.* Her bond hearing was held on August 11, 2026, but she was not taken to court. *Id; see also,* Declaration of Keli M. Reynolds ("Reynolds Decl") ¶ 12. On August 12, 2026,

Petitioner's first master calendar hearing was held, but she was not taken to court. Pet. Decl. ¶ 12.

60. Petitioner submitted evidence of her significant family ties, her education, her employment, her fixed address, and her service to her family and her community. *See* Exs. B and C. Petitioner also submitted evidence that she rectified her mistake on the day she learned how. *See* Ex. B. DHS submitted evidence that verified that Petitioner had no criminal history. *See* Ex. D. Nevertheless, the IJ found that she is a danger to the community. *See* Ex. A.

61. DHS counsel did not submit any evidence of national security concerns relating to Petitioner's act of voting unlawfully. *See* Exs. B-D. DHS counsel did argue that "this administration is focusing on immigrants who have taken affirmative steps to represent themselves as U.S. citizens." *See* Ex. A. The IJ did not cite to any case law, studies, or other evidence indicating that Petitioner's mistake of voting implicated national security. *Id.* The only evidence presented at the hearing regarding this was DHS counsel's argument about the Trump administration's priority placed on noncitizen voters. *See* Exs. A-D.

62. Moreover, the IJ found that Petitioner is a danger to the community without reviewing or analyzing any of the evidence in support of the factors set forth in *Matter of Guerra. Id; see also* Reynolds Decl. ¶ 14. In his oral decision, he did not cite any of Petitioner's evidence of rehabilitation or service to the community. *Id.*

63. The IJ's decision must also be viewed against significant recent changes in Immigration Court bond adjudication. EOIR data show that in 2025, IJs denied 43% of bond requests, which was an increase from 36% in 2024. The denial rate reached 55% in the first three months of 2026.[1]

64. This transformation has been particularly acute in Adelanto, where 57% of bond requests have been denied since November 10, 2025. *Id.* A data analysis performed by Zabdi J. Salazar, Ph.D. candidate and U.C. Berkeley School of Law graduate (J.D. 2024; admitted Texas Bar), the denial share increased by 18.1% after November 10, 2025, and all 11 IJs in Adelanto had higher mean recorded bond amounts after November 10, 2025. *See* Ex. E, Adelanto Bonds Declaration of Zabdi J. Salazar, ¶¶ 12, 22. In April of 2026, Adelanto had a staggering 62.1% bond denial rate.

65. November 10, 2025 is an inflection point because an internal email was sent to Southern California Immigration Judges that is the subject of ongoing litigation under the Freedom of Information Act in *Nat'l Day Laborer Organizing Network v. Exec. Office of Immig. Review, et al.,* No. 8:26-cv-00100 (C.D. Cal. Jan. 13, 2026). *See* Ex. G, Redacted Email from Theresa M. Scala to Rodin Rooyani, obtained as a result of the litigation.

---

[1] Bennet, Jared, "Deportation Machine" or long-overdue enforcement? Bond denials grow sharply under Trump, *LAist*, July 15, 2026, at https://laist.com/news/adelanto-immigration-bond-denials-2026

66. Petitioner's family is suffering without her. Exs. B and C. Babi cannot understand why she did not come home on the 16th. Pet. Decl. ¶ 15. Her family is struggling to care for Babi without her. *Id.* Petitioner has also lost her job opportunity and will struggle to rebuild her career. *Id; see also* Ex. B.

67. Petitioner has interacted with DHS officers numerous times since she registered to vote and voted in 2018. Pet. Decl. ¶ 16. She was not detained in 2019 when she informed the immigration officer of her mistake. *Id*. She has traveled internationally three times since 2019 and was not detained when reentering the country. *Id.* She renewed her permanent resident card in 2024 and was not detained. *Id.* She attended a naturalization interview in 2024. Pet. Decl. ¶ 10. She was not detained during any of these encounters. *Id.*

68. Being in the immigration detention center is taking a toll on Petitioner's emotional health. Pet. Decl. ¶ 17. It is an abusive environment. *Id.* Petitioner spends her days praying that she can return to her family and her community. *Id.* She prays that she can return to the job she loves and begin serving her community again soon. *Id.*

## EXHAUSTION

69. There is no requirement of statutory exhaustion for a petition for writ of habeas corpus. However, exhaustion may be required as a prudential matter. *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012).

70. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted).

71. Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).

72. A court may waive the exhaustion requirement "when administrative remedies are inadequate or their exercise would be futile, or irreparable injury would result without immediate judicial intervention." *Ward v. Chavez*, 678 F.3d at 1045.

73. Prudential exhaustion should be waived because administrative remedies are inadequate and exhaustion would be futile. Of the 39 Board of Immigration Appeals decisions issued in the months May through August 2025 in cases where the noncitizen appealed Adelanto immigration court bond decisions, none of those cases overturned an immigration judge's finding that the noncitizen was a danger to others

or a flight risk.[2] Of the six decisions which sustained the appeal and remanded the case, all were due to procedural errors made by the immigration judge. *Id.*

74. The precedent decisions issued by the Board of Immigration Appeals under the Trump Administration further indicate that it is futile to require prudential exhaustion in this case. A March 30, 2026 report issued by the National Public Radio found that last year, 97 percent of Board published decisions were in favor of the Department of Homeland Security.[3] On April 9, 2026, *The New York Times* reported that "The administration has instructed judges to stop granting bond to immigrants who crossed the border illegally, a change from decades of practice. The new policy has required people to remain in detention for extended periods even if they do not have a criminal record and have lived in the country for years."[4]

75. Ph.D. Candidate Zabdi J. Salazar has performed an extensive analysis of EOIR administrative data showing bond outcomes and appeals. He provides two declarations analyzing BIA bond appeal processing times, recent completion patterns

---

[2] The decisions are posted at EOIR Freedom of Information Act (FOIA) Reading Room at https://foia.eoir.justice.gov/app/ReadingRoom.aspx. They are not available after August of 2025.

[3] Ximena Bustillo, Rahul Mukherjee, "An Immigration Court Few Have Heard of is Quietly Shaping Policy Behind the Scenes," npr.org, (Mar. 20, 2026) https://www.npr.org/2026/03/20/nx-s1-5707535/trump-immigration-detention-appeals-board-deportation

[4] Nicholas Nehamas, Allison McCann, Steven Rich, Jazmine Ulloa and Hamed Aleaziz, "How Trump Purged Immigration Judges to Speed Up Deportations," *The New York Times*, April 9, 2026 https://www.nytimes.com/2026/04/09/us/politics/trump-miller-immigration-judges-purge.html

and outcome patterns. *See* Ex. F, Declaration of Zabdi J. Salazar regarding BIA Bond Appeal Processing and Outcomes.

76. The data further demonstrate that BIA review does not provide an adequate or timely remedy. *Id*. They are slower, harsher, and systematically weaponized by DHS. In the first quarter of 2026, the median processing time of these appeals more than doubled from the fourth quarter of 2025 (from 87 days to 200 days). *Id*. ¶ 12. Thus, the typical completed appeal took more than twice as long. Nevertheless, the BIA sustained *no* noncitizen-filed bond appeals in either quarter. *Id*. ¶ 19. Meanwhile, DHS filings surged 26x, from 56 to 1,486, and the only favorable merits outcome for a noncitizen in the first quarter of 2026 was a DHS appeal that failed and never a noncitizen win. *Id.* ¶ 23.

**FIRST CLAIM FOR RELIEF**
**Violation of the Fifth Amendment to the United States Constitution**
**(Substantive Due Process – Detention)**

77. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

78. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690; *see also Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (all forms of civil detention must bear a "reasonable relation" to a non-punitive purpose).

79. As set forth herein, Petitioner's removability has been known to Respondents since 2019 and Respondents have repeatedly chosen not to detain her. Where there is evidence that Petitioner's bond denial is the result of political influence and not in accordance with established principles for determining that Petitioner is a danger to the community or a flight risk, Petitioner asserts that her bond hearing did not satisfy due process.

80. The government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. The IJ's decision is emblematic of the serious concerns about whether bond hearings in Immigration Court currently provide a neutral and impartial forum. Petitioner maintains that they do not and asks this Court to consider the data cited above regarding the recent transformation of the Immigration Courts.

81. As numerous federal district courts have found, "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore. As a result, courts across the country have, with increasing frequency, ceased 'order[ing] even initial bond hearings … because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, … and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through post-hoc justifications.'" *Zheng v. Rokosky*, et al., 826 F.Supp.3d 545, 563 (D.N.J. Mar. 23, 2026) (collecting cases); *see also, id.* at *6 (ordering immediate release after "IJ erroneously stated that

she lacked jurisdiction in direct defiance of [the] Court's Order, failed to provide any explanation whatsoever for her supposed alternative holding that Petitioner is a flight risk, and by all appearances acted as a 'mere rubber-stamp' … for Respondents' predetermined decision to deny bond"); *Montero-Martinez v. Mattos, et al.*, 2026 WL 674497, at *1–2 (D. Nev. Mar. 9, 2026) (ordering release after petitioner's due process rights were violated when his bond was "revoked based on materially false information" regarding his criminal record); *Miri v. Bondi*, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (ordering release after finding IJ abused its discretion in denying bond where they "did not explain the reasons for denying Miri's bond," "did not describe which … factors were considered, if any, or what evidence was relied on," and "did not explain the reasons for denying Miri's bond and the record does not establish that the [IJ] relied on the appropriate factors"); *Rodriguez v. Greene*, 2026 WL 574961, at *12 (N.D. Ohio Mar. 2, 2026) (finding due process violation where "the IJ's decision … contain[ed] zero reference to any record or arguments put forth by either party," denied bond "exclusively on jurisdictional grounds," and held in the "alternative" that the petitioner was a danger to the community and a flight risk "without supplying any reasoning [as to] how the IJ came to such a conclusion").

82. Here, detention bears no reasonable relation to either of the objectives of flight risk or danger to the community. The decision did not take into account all the evidence. The IJ's decision was the result of obvious bias and political influence and failed to follow the legal standards governing the determination of flight risk and

danger to the community. *Matter of Guerra*, 24 I&N Dec. 37, 38–40 (BIA 2006). Proper application of these factors compels setting bond. Petitioner has lawfully resided in the United States since 2013, maintains a fixed address with her mother, father and three siblings, earned a University degree, has a license accorded by the state of California to work as an RN, and serves the community by using her own money to feed and supply the unhoused. She has no criminal convictions, no meaningful immigration violations, and a record of cooperating with government requirements. These facts do not establish that Petitioner is a danger or a flight risk under the governing legal framework, particularly where due process mandates that the burden rests with the government.

**SECOND CLAIM FOR RELIEF**
**Violation of the Fifth Amendment to the United States Constitution**
**(Procedural Due Process – Detention)**

83. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

84. Petitioner had a weighty liberty interest in avoiding detention after her unlawful voting was known to Respondents for seven years yet they chose not to detain her. *See Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey*, 408 U.S. at 482–83; *see also Ortega*, 415 F. Supp. 3d at 969–70 (holding that a noncitizen has a protected liberty interest in remaining out of custody following an IJ's bond determination), *see also Fernandez Lopez*, 2025 WL 2959319 at *5 (finding a noncitizen granted parole at the border has

a liberty interest in her conditional release and that such a parolee has an implicit right to remain at liberty if she complies with the conditions of her parole); *Abduraimov v. Andrews*, 2025 U.S. Dist. LEXIS 202711, at *17 (E.D. Cal. Oct. 14, 2025) (finding that immigration parole has a "legitimate and reasonably strong private liberty interest"); *Noori*, 807 F. Supp. 3d at 1164 (parolee developed a private interest in remaining free in the one year he has resided in the United States since entry); *Ramirez Tesara*, 2025 U.S. Dist. LEXIS 179205 at *9 (finding that parolee's liberty interest did not expire with his parole agreement).

85. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990 (cleaned up); *Zinermon*, 494 U.S. at 127 ("[T]he Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Martinez v. Clark*, 124 F.4th 775, 785, 786 (9th Cir. 2024). When Respondents chose not to detain Petitioner following her 2019 naturalization interview, they did so because they determined she was not a flight risk or a danger to the community. Prior to her detention in July of 2026, Petitioner

had no notice of Respondents' intention to detain her and no opportunity to contest that action.

86. The government has no legitimate interest in detaining Petitioner without a hearing, as bond hearings are a routine part of immigration court proceedings, imposing a minimal cost to the government. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Nothing in Petitioner's record suggests that she would abscond or endanger the community before a bond hearing could be carried out. *See, e.g.*, *Jorge M.F. v. Wilkinson*, 2021 U.S. Dist. LEXIS 40823, at *8 (N.D. Cal. Mar. 1, 2021); *Vargas v. Jennings*, 2020 U.S. Dist. LEXIS 153579, at *13 (N.D. Cal. Aug. 23, 2020) (finding that "the government's concern that delay in scheduling a hearing could exacerbate flight risk or danger is unsubstantiated in light of petitioner's strong family ties and his continued employment during the pandemic as an essential agricultural worker").

**THIRD CLAIM FOR RELIEF**
**Violation of the Administrative Procedure Act**
**(Failure to Apply *Matter of Guerra*)**

87. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

88. This Court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

89. Immigration judges are required to follow precedent. 8 C.F.R. § 1003.1(g) ("decisions of the Board and decisions of the Attorney General are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States.").

90. The BIA has set forth the legal standards governing the determination of flight risk and danger to the community in *Matter of Guerra*, 24 I&N Dec. 37, 38–40 (BIA 2006). Immigration Judges consider the factors set forth in paragraph 41 above. Proper application of these factors compels setting bond. Petitioner has resided in the United States since 2013 with her family, maintains a fixed address with her family, has earned a university degree, is employed as a registered nurse, has no criminal convictions, and has never harmed a person or deprived them of property. Moreover, she rectified her mistake as soon as she determined how, and there is no evidence that she has ever engaged in any behavior that would threaten national security. Even if this Court were to credit the IJ's unfounded determination that Petitioner's act threatened national security, there was no evidence that she would engage in such acts in the future. She de-registered and later applied for citizenship again. These facts do not establish that Petitioner is a danger or a flight risk under the governing legal framework.

91. This Court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

92. "The IJ's failure to consider or apply any of the [legally-required] factors and decision to instead rely on three pieces of evidence that bear little if any relevance to Petitioner's risk of flight, . . . while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts. Indeed, the IJ relied upon proof that—as a matter of law—could not establish that Petitioner was a flight risk") (cleaned up). *See Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, ECF No. 11, at *11 (S.D. Cal. Apr. 16, 2026). Where the record "unequivocally contradicts" an IJ's finding of danger or flight, an IJ abuses his discretion. *Vasquez Lopez v. Hernandez*, No. C26-0775 TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026).

93. It is Respondents' burden to "provide [a] reasoned explanation for [their] action." *Fox Television*, 556 U.S. at 515. "A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington*, 516 F.3d at 1112. Here, there is no reliable evidence to justify Respondents' decision to detain Petitioner now where they chose not to detain her in 2019 or 2024, or during any of her international travel in the interim. Petitioner's detention constitutes an "unexplained inconsistency between agency actions" that must be set aside as arbitrary and capricious. *See Y-Z-L-H*, 792 F. Supp. 3d at 1147 (citing *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015)).

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully asks this Court to take jurisdiction over this matter and grant the following relief:

a. Order that Petitioner shall not be transferred outside of the Central District of California while this petition is pending;

b. Issue an Order to Show Cause ordering Respondents to show cause within three days why this Petition should not be granted;

c. Issue a Writ of Habeas Corpus and order Respondents to immediately release Petitioner from custody;

d. Declare that Petitioner's detention is unlawful;

e. Enjoin Respondents from re-detaining Petitioner without first providing her with individualized notice describing the change in circumstances necessitating her arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge at which Respondents will bear the burden of proof to demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community, and that there are no conditions or combination of conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community;

f. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

g. Grant any other and further relief that this Court deems just and proper.

Respectfully Submitted,

DATED: August 18, 2026

s/ Keli M. Reynolds
KELI M. REYNOLDS
Olmos & Reynolds Law Group, LLP
*Attorney for Petitioner*

**VERIFICATION**

I, Keli M. Reynolds, declare as follows:

I am an attorney admitted to practice law in the State of California. Because many of the allegations of this Petition require a legal knowledge not possessed by the Petitioner, I am making this verification on her behalf. I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof to be true to my knowledge, information, or belief.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 18, 2026.

s/ Keli M. Reynolds
KELI M. REYNOLDS
Olmos & Reynolds Law Group, LLP
*Attorney for Petitioner*

## LIST OF EXHIBITS

A. Immigration Judge Order denying bond and transcript of bond proceedings

B. Petitioner's First Evidence Packet Submitted for Bond

C. Petitioner's Second Evidence Packet Submitted for Bond

D. DHS Evidence Packet Submitted at Bond Hearing

E. Declaration of Zabdi J. Salazar re: Adelanto Bonds

F. Declaration of Zabdi J. Salazar re: Bond Appeals at BIA

G. Redacted Internal EOIR Email